**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**ROBERT M. DUNCAN,**
    **- Plaintiff**

  **v.**                            **CIVIL NO. 3:10-CV-365 (VLB)(TPS)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION**
    **- Defendant**

## MAGISTRATE JUDGE'S OPINION

The plaintiff brings this action pursuant to 42 U.S.C. § 405(g). He seeks review of a final decision by the defendant, the Commissioner of Social Security ("Commissioner"), which found that he was not entitled to Disability Insurance Benefits and Supplemental Security Income. The plaintiff moves for an order reversing the Commissioner's decision. (Dkt. #18). The Commissioner opposes the plaintiff's motion and moves for an order affirming his decision. (Dkt. #22). For the reasons discussed below, the plaintiff's motion for judgment on the record should be **GRANTED** and the defendant's motion to affirm should be **DENIED**. 28 U.S.C. § 636(b). The case should be **remanded** solely for the calculation and payment of benefits.

The Court notes here that the plaintiff is now and has been proceeding *pro se*. The plaintiff's Motion for Judgment on the Pleadings (Dkt. #18) is deficient in many ways. However, where, as here, plaintiff is proceeding *pro se*, "leniency is generally

accorded." Bajana v. Astrue, No. 08 Civ. 8597 (RMB) (JCF), WL 1952007, at *2 (S.D.N.Y., July 7, 2009) (quoting Bey v. Human Resources Admin., No. 97 Civ. 6616, 1999 WL 3112, at *2 (E.D.N.Y. Jan. 12, 1999)). Having thoroughly reviewed the entire record, the magistrate believes that remand for a new hearing is unnecessary because the clear weight of the evidence requires a finding of "disabled" at step three of the sequential claim evaluation process.

Mr. Duncan was born on June 17, 1958, and is currently 52 years old. At the time of his alleged onset date, June 1, 2005, he was 46 years old. Mr. Duncan has a high school education. In the past, the plaintiff worked as a service writer in a car dealership and assistant manager. The plaintiff applied for a period of disability, Disability Insurance Benefits, and Supplemental Security Income on March 13, 2007. (R. at 66). The plaintiff claims he is disabled due to a combination of impairments including, *inter alia*, high blood pressure, skin disease, anxiety, depression, diabetes, diabetic neuropathy, and seizure disorder. (R. at 193, 304, 473.) The Commissioner denied the plaintiff's application for benefits initially. (R. at 4.) The plaintiff then requested that a federal reviewing official review the Commissioner's unfavorable decision. On December 12, 2007, a Federal Reviewing Official, Beth A. McKinnon, reviewed the decision and concluded that the plaintiff was not disabled. (R at 56.) The

plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 81). The hearing occurred on April 20, 2009 before ALJ Robert A. DiBaccaro. (R. at 19). On November 4, 2009, ALJ DiBaccaro found the plaintiff not disabled. Mr. Duncan's claim was selected for review by the Decision Review Board. On February 4, 2010, the Decision Review Board informed the plaintiff that it found no basis for changing the ALJ's decision. (R. at 1-3). This made the Commissioner's decision final. Id. On March 12, 2010, the plaintiff filed this instant case. Pl.'s Compl. 1, ECF No. 3.

The ALJ *must* follow a five-step sequential evaluation process when considering each application for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ determines whether the claimant is employed. If the claimant is unemployed, the ALJ proceeds to the second step to determine whether the claimant has a severe impairment that prevents him from working. If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment is equivalent to an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.

The sequential evaluation process is designed to facilitate the processing and review of Social Security cases administratively and in the courts. There is both logic and fairness to the process. Steps one and two are intended to provide a swift yet

accurate system of identifying claims that should be *denied*. Step three of the process, however, is intended to provide a mechanism for the quick identification and *granting* of meritorious claims. People who have listed impairments are disabled per se. Once it is determined that impairments meet or equal a listed impairment, benefits should be awarded, and the evaluation process ceases. Unfortunately for claimants and the courts, ALJs all too often ignore facts that establish a claimant's listed impairment, offering only inadequate, conclusory findings which slough over step three.

As this court recently noted in Crews v. Astrue, Civil No. 3:07-cv-1133 (D. Conn. 2010):

> The administrative decision offers no analysis, discussion, or subordinate factual finding anchoring this critical determination. While an ALJ need not reconcile every scrap of conflicting evidence, Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981); Mongeur v. Heckler, 722 F.2d 1033, (2d Cir. 1983), the less an ALJ offers to support a step three conclusion, the more difficult it becomes for the court to conduct a meaningful review.

Here, the ALJ has failed to make adequate specific findings as to the applicability *vel non* of the various parts and sub-parts of the regulations. The ALJ also overlooked facts which indicate that the guidelines have been met. Where the Commissioner fails to make specific findings, it leaves the court with no alternative but to supply the missing analysis. This is not a usurpation of Article I authority, but an exercise of Article III responsibility.

Only if the claimant does not have a listed impairment does

the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of the claimant's RFC, age, education, and work experience.  The claimant is entitled to disability benefits only if he is unable to perform other such work.

The magistrate does not believe it is an accident that ALJs regularly fail to discharge their responsibilities at step three of the sequential process.  Rather, they utilize a tactic designed to engage claimants--and the courts--on the more favorable battlefield of argument that inevitably arises at steps four and five of the sequential process.  It is much easier for the Commissioner to defeat a claim at steps four and five than it is at step three.  By misdirecting the issue from step three to step four or five, the Commissioner is able to embroil the court in an unnecessarily fact-intensive inquiry into residual functional capacity.  This is one reason why there are so many Social Security cases flooding the docket of district courts, to say nothing of withholding benefits from claimants whose listed impairments were not properly addressed at step three.

The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the

5

fifth step. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error . . . . Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). As long as there is substantial support for the decision in the record, any evidence in the record which could have supported a different conclusion does not undermine the Commissioner's decision. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

At step one of the five-step sequential evaluation process, the ALJ found that Mr. Duncan had not engaged in substantial gainful activity since June 1, 2005, the alleged onset date. (R. at 10). At step two, the ALJ found that Mr. Duncan suffered from six severe impairments: anxiety, depression, borderline intellectual functioning, diabetes mellitus, diabetic neuropathy and seizure disorder. Id. At step three, the ALJ found that Mr. Duncan does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR § 404, Subpart P. Appendix 1. Id. The ALJ found that Mr. Duncan has the RFC to perform light work with the limitations of simple instructions and routine, repetitive tasks. (R. at 12.)

6

At step four, the ALJ found that the plaintiff is unable to perform his past relevant work as a service writer and as an assistant manager. (R. at 16.) The ALJ so concluded because he believes that the demands of his past work exceed his RFC. Id. This, however, does not automatically make Mr. Duncan disabled as defined by the Social Security Act. Indeed, the ALJ found that based on the claimant's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that the claimant can perform. Id. Therefore, the ALJ concluded, Mr. Duncan has not been under a disability, as defined in the Social Security Act, from his alleged onset date of June 1, 2005, through the date of the his decision. (R. at 17.) Substantial evidence does not support the ALJ's conclusion.

Mr. Duncan is disabled under the statute because his impairment meets or equals a listed impairment at step three. 20 CFR § 404.1520 (a)(4)(iii) states "At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." Mr. Duncan meets the statutory criteria to be found disabled, under 12.05(c) of the listings, for "Mental Retardation." Section 12.05.

The introduction to section 12.00 "Mental Disorders" of 20 CFR 404, Subpart P. App. 1, states:

> If your impairment satisfies the diagnostic description in the introductory paragraph [of section 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing. . . . For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).

The introductory paragraph of section 12.05 states, in pertinent part: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." The requirements of paragraph C are: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 CFR 404, Subpart P. App. 1, s. 12.05(c). In short, there are three requirements which must be met for Mr. Duncan to be found disabled under this particular listing: (1) the significant subaverage general intellectual functioning must have manifested initially before he was twenty-two years old; (2) he must have a full scale IQ between 60 and 70; and

8

(3) he must have a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The ALJ's evaluation is not legally correct. The ALJ improperly applied the law to the facts presented by the plaintiff. The court finds that Mr. Duncan meets all three requirements of 12.05(c) and should have been found disabled. First, there is significant evidence to support the finding that he meets the first requirement that the subaverage general intellectual functioning must have manifested before he was twenty-two years old. See, e.g., R. at 511, ("He reports that he attended special education track in the second grade."). The ALJ does not point to any evidence to the contrary. See infra, at 11. Second, he has a full scale IQ of 65, as the ALJ himself notes on pages 6 and 9 of his decision. See also, R. at 512. An IQ of 65, of course, meets the second requirement of having an IQ between 60 and 70.

The third requirement, that Mr. Duncan must have a physical or other mental impairment imposing an additional and significant work-related limitation of function, is also met. As noted above, the introduction to section 12.00 "Mental Disorders" of 20 CFR § 404, Subpart P. App. 1, states that the degree of functional limitation that the additional impairment imposes will be assessed to determine if it significantly "limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c).'"

9

District courts in this circuit have adopted the approach taken by the First, Eighth, and Tenth Circuits holding that a limitation other than low IQ is "significant" if the claimant suffers from an additional physical or other mental impairment that is "severe" as that term is defined at step two of the Commissioner's sequential analysis. Edwards v. Astrue, 2010 WL 3701776, at *6 (N.D.N.Y. Sept. 16, 2010); see also Davis v. Astrue, 2010 WL 2925357, at *6 (N.D.N.Y. July 21, 2010) (the ALJ found the plaintiff's degenerative disc disease to be "severe" within the meaning of 20 C.F.R. § 404.1520(c); thus, the determination that the plaintiff did not have an additional physical impairment to satisfy 12.05(c) was not supported by substantial evidence).

Once the ALJ concluded, at step two of the analysis, that the plaintiff suffered from "severe impairments" under the meaning of the regulations, the plaintiff established the second prong of 12.05(c) as a matter of law. Ali v. Astrue, 2010 WL 889550, at *6 (E.D.N.Y., March 8, 2010); see also May v. Astrue, 2010 WL 1253646, at * 7 (N.D.N.Y. March 15, 2010) (the ALJ found that the plaintiff's mood disorder was a "severe" impairment necessitating a remand for a specific determination as to whether the plaintiff's limitations satisfied the second prong of 12.05(c)). In other words, paragraph (c) is satisfied if, in addition to an IQ between 60 and 70, the claimant has another "severe" impairment. This requirement also is clearly met by the ALJ finding that Mr. Duncan

has five other "severe" impairments. (R. at 10). The five other severe impairments found by the ALJ are: anxiety, depression, diabetes mellitus, diabetic neuropathy, and seizure disorder. Id. Therefore, Mr. Duncan meets the third requirement and is thereby legally disabled.

Yet another reason that the ALJ's 12.05 analysis is legally incorrect is that it is simply a pair of conclusory statements that are not supported by any evidence, let alone substantial evidence, from the record. In evaluating whether Mr. Duncan's impairments meet the requirements of paragraph (c), the ALJ did not support his conclusions with sufficient evidence from the record. The ALJ's analysis is reproduced here in its entirety:

> Finally, the 'paragraph C' criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the claimant has a full-scale IQ score of 65, he does not have a physical or other mental impairment that imposes additional and significant work-related limitations of function that preclude him from performing all work. (R. at 12.)

The Commissioner does not elaborate on this in his memorandum in support of the Motion for an Order Affirming the Decision of the Commissioner. Instead, the Commissioner offered another conclusory statement: "[T]he ALJ found that Plaintiff's anxiety, depression, borderline intellectual functioning, diabetes mellitus, diabetic neuropathy, and seizure disorder did not meet or equal, either singularly or in combination, an impairment contained in Appendix

11

1, Subpart P of Regulation No. 404 (the listings) (Tr. 10 at Finding 3)." Def. Mot. 10. Again, no evidence is cited to support the assertion that the plaintiff does not meet the requirements in paragraph C of 12.05. Because no evidence is used to support this finding, it is not supported by substantial evidence, and it is therefore legally incorrect.

Since the correct application of the legal principles leads this Court to only one conclusion, that the plaintiff is disabled, remand for another hearing is unnecessary. Schaal v. Apfel, 134 F.3d 496, 504 (2d. Cir. 1998). The Court can find, as a matter of law, that Mr. Duncan meets the requirements of 12.05 of the listings, and is therefore disabled. Put another way, the Court finds Mr. Duncan disabled at step three as his impairments meet or equal a listed impairment, namely, impairment 12.05 paragraph C of the listings. Because Mr. Duncan is disabled at step three, the inquiry ends there; there is no need to perform steps four or five of the analysis. Furthermore, remand is unnecessary where, as here, a court has no reason to believe that a more complete record would support the decision of the commissioner. See Yoxall v. Apfel, 2001 WL 539608, 21 (D. Conn. March 30, 2001) (citing Rosa v. Callahan, 168 F.3d 72, 83 (2d. Cir. 1999). It has been roughly four years since the plaintiff applied for benefits, so this case is remanded solely for the purpose of calculating benefits.

In sum, the Court finds that the ALJ's analysis was legally incorrect. The ALJ did not perform the proper inquiry when determining whether Mr. Duncan was disabled at step three. Although the ALJ found that Mr. Duncan was severely impaired by his borderline intellectual functioning at step two, the ALJ found that this impairment did not meet or equal a listed impairment. This is error. Using the ALJ's findings of other "severe" impairments at step two, the Court must find that Mr. Duncan meets the requirements of the listed impairment for "Mental Retardation." Section 12.05. Therefore, Mr. Duncan is disabled. The decision of the Commissioner must be **REVERSED** and the case **remanded** solely for the calculation of benefits. The Commissioner may timely seek review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72(b). Failure to do so may bar further review. 28 U.S.C. § 636(b)(1)(B); <u>Small v. Sec'y of Health & Human Servs</u>., 892 F.2d 15, 16 (2d Cir. 1989).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut, this 3rd day of January, 2011.**

                                           /s/ Thomas P. Smith
                                           **Thomas P. Smith**
                                           **United States Magistrate Judge**